NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEREMY E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.E., *Appellee*s.

No. 1 CA-JV 18-0132
FILED 8-28-2018

Appeal from the Superior Court in Yavapai County
No.  P1300JD201700072
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Randall M. Howe, and Judge James B. Morse Jr. joined.

**T H O M P S O N**, Judge:

¶1        Jeremy E. (father) appeals the juvenile courts order terminating his parental rights to J.E. (the child).  Father argues that the juvenile court erred in finding that (1) he had neglected his child pursuant to Arizona Revised Statutes (A.R.S.) section 8-533(B)(2) (2018); and (2) his length of incarceration would deprive the child of a normal home for a period of years pursuant to A.R.S. § 8-533(B)(4) (2018).  For the following reasons we affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL HISTORY

¶2        The child came into care when the police were called after the child's mother Kelli C., (mother) was seen driving erratically.  The police arrived at the home where the car was registered and witnessed mother drive up and almost hit the child with the car.   Upon searching the car police found methamphetamine, prescription pills, a spoon with pill residue, new and used syringes and a glass pipe with methamphetamine residue on it.   Mother was arrested and charged with possession of dangerous drugs, passion of drug paraphernalia, DUI, and child endangerment.   She ultimately was sentenced to 3.5 years in prison. The child was placed with his maternal grandmother, with whom he, his brother, T.M. [1], and mother had already lived, and DCS filed a dependency action.

¶3        At the time the child was taken into custody, father was serving a five-year sentence for narcotic drug violations and promoting prison contraband for which he was sentenced on August 7, 2014.  Although the record is not clear about father's release date from prison, his earliest release date is in August 2018, and his maximum release date is in July 2019.

---

[1] T.M. is not subject to this appeal as father is not his biological or legal father.

¶4        The Department of Child Safety (DCS) moved for termination of parental rights on December 20, 2017.  The juvenile court held an evidentiary hearing on March 5, 2018, at which time father moved for a paper trial and the court granted the motion in lieu of live testimony.  On April 2, 2018, the court granted DCS's motion for termination finding that father had neglected the child, and that his length of incarceration would deprive the child of a normal home for a period of years.   Father timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2018), 12-120.21(A)(1) (2018), and 12-2101(B) (2018).

## DISCUSSION

¶5        A parent's right to custody and control of his own child, while fundamental, is not absolute.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49 ¶¶ 11-12 (2000).  Severance of a parental relationship may be warranted where the state proves one of A.R.S. § 8-533's statutory grounds for termination by "clear and convincing evidence." *Id.*; A.R.S. § 8-863(B) (2018). "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005). Additionally, the court must also determine what is in the best interest of the child by a preponderance of the evidence. *Id.* at 283, ¶¶ 16, 22.

¶6        "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002).  We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶7        To terminate parental rights under A.R.S. § 8-533(B)(4), a court must find that "the sentence of [the] parent is of such length that the child will be deprived of a normal home for a period of years."  The time frame encompassed is the entire period of the parent's incarceration and absence from the home, rather than the sentence which remained at the time of the severance proceedings.  *Jesus M.*, 203 Ariz. at 206, ¶ 8.

¶8        In determining if the sentence of an incarcerated parent is of such length that the child will be deprived of a normal home for a period of years, the court should consider, but is not limited to, the following factors:

> (1) [T]he length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which

parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on child at issue.

*Michael J.*, 196 Ariz. at 251-52, ¶ 29.

**¶9** Father argues that the child will not be deprived of a normal home because he will be released in August of 2018. However, the record does not reflect that the August release date is accurate or guaranteed. Additionally, the incarceration time the court is required to look at is the entire sentence, not just the remaining sentence. Father has been incarcerated since August 2014, and at the earliest will be released August 2018. The child will be seven years old at that time. Thus, father will have been incarcerated for more than half of the child's life which has deprived the child of a normal home. Additionally, the record reflects that the parental relation between father and child was minimal and father only began reaching out to the child after the dependency was initiated. Thus, the juvenile court did not err in terminating father's parental rights.

**¶10** Because we affirm on the incarceration grounds, we need not consider whether the juvenile court's findings justified severance based upon neglect pursuant to A.R.S. § 8-5363(B)(2). *See Michael J.*, 196 Ariz. at 251, ¶ 27. Additionally, father did not argue that severance was not in the best interest of the child, and we therefore do not address the best interest finding. *Id.* at 249, ¶ 13.

## CONCLUSION

**¶11**        For the foregoing reasons we affirm the juvenile court's decision.

